UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| B.F.S., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. 8:19-cv-01428-SHK <br><br> OPINION AND ORDER |

Plaintiff B.F.S.[1] ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner," "Agency," or "Defendant") denying his application for disability insurance benefits ("DIB"), under Title II of the Social Security Act (the "Act"). This Court has jurisdiction under 42 U.S.C. § 405(g), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the Commissioner's decision is REVERSED and this action is REMANDED for further proceedings consistent with this Order.

---

[1] The Court substitutes Plaintiff's initials for Plaintiff's name to protect Plaintiff's privacy with respect to Plaintiff's medical records discussed in this Opinion and Order.

## I. BACKGROUND

Plaintiff filed an application for DIB on February 22, 2017, alleging disability beginning on February 1, 2017. Transcript ("Tr.") 202-05.[2] Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ") and, on January 25, 2019, ALJ Susanne M. Cichanowicz determined that Plaintiff was not disabled. Tr. 17-33. Plaintiff sought review of the ALJ's decision with the Appeals Council, however, review was denied on May 21, 2019. Tr. 1-6. This appeal followed.

## II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing.") (citation omitted). A reviewing

---

[2] A certified copy of the Administrative Record was filed on December 26, 2019. Electronic Case Filing Number ("ECF No.") 17. Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number, with the exception of the Joint Stipulation.

2

court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

### III. DISCUSSION

#### A. Establishing Disability Under The Act

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a). Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps

one through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [DIB]. If the claimant is not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [DIB]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

>Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [DIB]. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant can do: (1) by the testimony of a vocational expert [("VE")], or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [DIB]. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [DIB]. See id.

Id. at 1098-99.

### B. Summary Of ALJ's Findings

The ALJ determined that "[Plaintiff] meets the insured status requirements of the . . . Act through September 30, 2022." Tr. 19. The ALJ then found at step one, that "[Plaintiff] has not engaged in [SGA] since February 1, 2017, the alleged onset date (20 CFR 404.1571 et seq.)." Id. At step two, the ALJ found that "[Plaintiff] has the following severe impairments: degenerative disc disease of the lumbar spine and neurocognitive disorder (20 CFR 404.1520(c))." Tr. 20. At step three, the ALJ found that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." Id.

In preparation for step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to:

perform light work as defined in 20 CFR 404.1567(b) except: [Plaintiff] can lift and/or carry twenty pounds occasionally, ten pounds frequently; [Plaintiff] can sit, stand or walk for six hours out of an eight-hour workday; [Plaintiff] can occasionally climb ramps, stairs, ladders, ropes and scaffolds; [Plaintiff] can frequently balance, stoop, kneel, crouch and crawl; [Plaintiff] is limited [to] occasional exposure to hazards, such as unprotected heights and dangerous moving machinery; [Plaintiff] is limited to performing simple and routine tasks.

Tr. 23. The ALJ then found, at step four, that "[Plaintiff] is capable of performing past relevant work [("PRW")] as a warehouse worker. This work does not require the performance of work-related activities precluded by [Plaintiff's] [RFC] (20 CFR 404.1565)." Tr. 31.

The ALJ found that the occupation of warehouse worker as it is described in the Dictionary of Occupational Titles ("DOT") at DOT 922.687-058 "is a medium, unskilled . . . occupation as generally performed pursuant to the DOT, but actually performed as light work as described by Plaintiff." Id. The ALJ determined that "[Plaintiff] is able to perform this [PRW] as actually performed by [Plaintiff], but not as generally performed in the national economy." Tr. 32.

The ALJ added that "[a]lthough [Plaintiff] is capable of performing [PRW], there are other jobs existing in the national economy that he is also able to perform" and, "[t]herefore, the [ALJ] ma[de] the following alternative findings for step five of the sequential evaluation process." Id.

In preparation for the alternative step five finding, the ALJ noted that "[Plaintiff] was born on November 14, 1976 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 416.963)." Id. The ALJ observed that "[Plaintiff] has a limited education and is able to communicate in English (20 CFR 404.1564)." Id. The ALJ then added that "[t]ransferability of job skills is not material to the determination of disability

because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills[.]" Id.

At step five, the ALJ found that "[c]onsidering [Plaintiff's] age, education, work experience, and [RFC], [Plaintiff] is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." Tr. 33. Specifically, the ALJ found that Plaintiff could perform the "light, unskilled" occupations of "Assembler, DOT 706.684-022" and "Packer, 920.687-166[.]" Id. The ALJ based his decision that Plaintiff could perform the aforementioned occupations "on the testimony of the [VE]" from the administrative hearing, after "determin[ing] that the [VE's] testimony [wa]s consistent with the information contained in the [DOT]." Id.

The ALJ concluded that "[a] finding of not disabled is . . . appropriate under the framework of the above-cited rule." Id. (internal quotation marks omitted). The ALJ, therefore, found that "[Plaintiff] has not been under a disability, as defined in the . . . Act, from February 1, 2017, through [January 25, 2019], the date of th[e] decision (20 CFR 404.1520(f))." Id.

**C.    Issues Presented**

In this appeal, Plaintiff raises two issues, whether the ALJ properly evaluated: (1) the treating psychiatrist's opinions, and (2) the consultative psychologist's opinions. ECF No. 21, Joint Stip. at 4. Because the Court finds that the second issue is dispositive here, it begins its analysis there and does not address the review of the treating psychiatrist's opinons.

**D.    Court's Consideration Of Second Issue**

   **1.    Parties' Arguments**

Plaintiff argues that the ALJ's partial rejection of Plaintiff's consultative psychologist Paul Fernandez, Ph.D.'s, opinion was not supported by substantial evidence in the record. Id. at 18. Plaintiff argues that "[t]he ALJ's analysis

7

regarding Dr. Fernandez's opinions is somewhat confusing" and "[t]he ALJ also did not identify which of the opinions were given partial weight as opposed to others." Id. at 19.  Plaintiff adds that "the ALJ stated that Dr. Fernandez's opinions are not consistent with the treatment records without specifying which of the opinions were inconsistent with which aspects of the treatment records." Id.

Defendant responds by arguing that the ALJ's finding was supported by substantial evidence because "[t]he ALJ found that the severity of some of the functional limitations Dr. Fernandez assessed were inconsistent with Plaintiff's treatment records as well as Dr. Fernandez's own examination." Id. at 21 (citing Tr. 30).  Defendant adds that "[e]ven if the ALJ had erred, however, which the Commissioner does not concede, any error would be harmless" because Dr. Fernandez's opinion is fully consistent with the ALJ's [RFC]." Id. at 23.  Defendant asserts that "there were conflicting medical opinions in the record and the ALJ properly evaluated the evidence and resolved the conflicts and ambiguities, which is her role." Id. at 24 (citation omitted).

### 2.   Dr. Fernandez's Opinion

On May 23, 2017, Dr. Fernandez completed a psychological examination of Plaintiff.  Tr. 520-28.  Dr. Fernandez noted that his findings were based on a "complete psychological evaluation[,]" a "mental status examination[,]" a "Wechsler Adult Intelligence Scale – IV" test, a "Wechsler Memory Scale – IV" test, a review of Plaintiff's "many medical records[,]" and a review of the "history" of Plaintiff's diagnoses of anxiety disorder, depressive disorder, and learning disorder.  Tr. 520-27 (capitalization normalized).

Dr. Fernandez noted that Plaintiff "was driven to the examination by his adult sister" who also "completed the intake form due to [Plaintiff's] significant reading and writing difficulties." Tr. 520.  Dr. Fernandez added that "[r]elated to reading and writing issues, [Plaintiff] indicates that he received RSP special education services in school from kindergarten through when he stopped going to

school." Tr. 521. Dr. Fernandez noted in the "present concerns and history of present illness" portion of his opinion that:

> [Plaintiff] had spinal meningitis at the age of two in 1978 which has significantly impacted him cognitively. The spinal meningitis resulted in brain damage and coma. There was nerve damage at the left side of the body. [Plaintiff] has little or no feeling on his left side with left side weakness ([Plaintiff] demonstrated to this examiner difficulties picking up a pencil, holding a pencil, or putting any pressure on it). [Plaintiff] also has sensory losses and then a learning disability. There are some suspected brain lesions in the right hemisphere. According to the information from the form, the right cerebral hemisphere was found to be diffusely smaller compared to the left cerebral hemisphere with thickening to the right calvarium. The diagnosis by doctors were right sided hematrophy most notably involving the right post central gyros and parietal-occipital lobes. There was thickening of the ipsilateral right calvarium. There was found to be Rasmussen's encephalitis.

Tr. 521.

Dr. Fernandez observed that Plaintiff "sees a psychologist weekly and a psychiatrist monthly" for his mental impairments and that his "family psychiatric history is significant for cerebral atrophy, cognitive disorder, chronic cerebral infraction, meningitis, hearing disorder, and focal sensory loss." Id. Dr. Fernandez then discussed Plaintiff's medical and educational records that included, in pertinent part:

- a letter from Plaintiff's treating psychologist "indicating that based on the physical and mental impairment, [Plaintiff] was no longer able to work as of March 12, 2017";
- a "brain scan report" noting "that [Plaintiff's] right cerebral hemisphere was diffusely smaller comparted to the left cerebral hemisphere[,]" an

        impression of Plaintiff's "right cerebral hemisphere with diffused right sided hematrophy[,]" and a "[d]ifferential diagnosis . . . [of] prior Rasmussen's encephalitis";

- a November 2016 note from Plaintiff's treating psychologist indicating that Plaintiff "had cerebral atrophy, cognitive disorder, viral meningitis when he was two years old, cerebral infraction-chronic encephalopathy, history of bacterial meningitis, hearing disorder and sensory loss";
- a "Santiago Canyon College Learning Disability Assessment Profile" indicating that Plaintiff "was tested and he was found to have low average scores in sight vocabulary, [and] reading vocabulary[,]" "low" math computation skills, and "borderline" math application skills;
- Plaintiff's high school report cards indicating that Plaintiff "had fluctuating scores with a number of Fs, some Ds but low attention scores";
- "additional records" provided by the Social Security Administration indicating that Plaintiff "had developmental disability";
- A "Clinical Impression from UC Irvine Health dated September 29, 2016" indicating that Plaintiff "had cerebral atrophy of the right hemisphere due to childhood infection, cognitive disorder, static encephalopathy, and history of bacterial meningitis in childhood, history of learning disorder and old focal sensory loss of the left side due to lesion of right side"; and
- A "neurological report" by a "medical specialist indicat[ing] that his testes were consistent with previous education level and a history of learning disability";

Tr. 522-23 (capitalization normalized).

        Dr. Fernandez also noted that Plaintiff "cannot count change[,]" that Plaintiff "seem[ed] somewhat anxious" during the exam, that Plaintiff's behavior

"demonstrate[d] some difficulties with cognition and emotional maturation[,]" that Plaintiff's "left hand shook noticeably when he was demonstrating that he had difficulties with his left side[,]" and that Plaintiff "also had tremors on his right hand and arm when he was working during the coding task." Tr. 524. Dr. Fernandez indicated that Plaintiff was "respectful, cooperative, friendly, tense, anxious, fearful, and pleasant in the style of presentation[,]" that Plaintiff "cooperated with psychometric testing and put forth adequate effort[,]" and that Plaintiff's "[r]esponse time and work pace were below average." Tr. 524-25.

Dr. Fernandez indicated, in pertinent part, that "slight confusion was evident[,]" Plaintiff "was able to recall 3 out of 3 objects (ear, balloon, flag) in an immediate mode" but only "1 out of 3 remotely." Tr. 525. Dr. Fernandez added that Plaintiff "could not perform serial seven's [sic]" and "[o]verall, [Plaintiff's] memory was moderately impaired." Id. Dr. Fernandez also indicated that Plaintiff's "attention and concentration levels were mildly impaired" as evidenced by Plaintiff's inability to "state the months in a backward mode[,]" that Plaintiff had an "inadequate attention span for answering interview questions and following test instructions[,]" and that Plaintiff displayed an inability "to sustain concentration and work without distraction" during "performance tasks." Id.

Dr. Fernandez noted that Plaintiff tested in the following percentile range as evidenced by the Wechsler Adult Intelligence Scale test:
- Verbal comprehension: 63
- Perceptual reasoning: 21
- Working memory: 37
- Processing speed: 14
- Full scale IQ: 30

Tr. 526.

Dr. Fernandez added that Plaintiff tested in the following percentile range as evidenced by the Wechsler Memory Scale test:

11

- Auditory memory: 1
- Visual memory: 2
- Visual working memory: 2

Id.

Dr. Fernandez found that "[t]he test results appear to be a valid estimate of [Plaintiff's] functional level at this time. [Plaintiff] was able to focus and concentrate on the test items and appeared to put forth effort in responding to the questions. Rapport was adequate for test purposes between this examiner and [Plaintiff]." Tr. 527.

Dr. Fernandez opined that Plaintiff had "a moderate difficulty to understand, remember, and carry out detailed instructions" and "[f]rom a cognitive standpoint, given the total[it]y of issues, [Plaintiff] has a moderate difficulty to maintain attendance and complete an eight-hour workday in a regular workplace setting." Tr. 527-28. Dr. Fernandez added that Plaintiff "was socially mildly inappropriate with the examiner given some of his confused statements[,]" he would have "a mild difficulty to interact appropriately with supervisors, coworkers and peers," "to deal with the usual stresses of a competitive workplace setting[,] and [in] handl[ing] routine work changes." Tr. 528. Dr. Fernandez added that Plaintiff "could not perform a change counting problem" and "does not manage funds on his own behalf due to significant math problems." Id.

### 3. ALJ's Consideration Of Dr. Fernandez's Opinion

The ALJ gave "partial weight to the opinion of consultative examiner, Dr. Fernandez" because:

> The severity of some of the functional limitations assessed by Dr. Fernandez are inconsistent with [Plaintiff's] treatment records as well as Dr. Fernandez's findings that all of [Plaintiff's] impairments were diagnosed by history. Although a mental status examination revealed below average response time and moderately impaired memory,

12

> [Plaintiff] had adequate eye contact, cooperative behavior, adequate speech, a cheerful and positive mood, appropriate affect, no signs of perceptual disturbances, only mildly impaired attention and concentration, not impaired insight and judgment, not impaired fund of knowledge, and a Full Scale IQ score in the average range.

Tr. 30 (citing Tr. 520-28).

### 4. Standard To Review ALJ's Analysis Of Medical Opinions

There are three types of medical opinions in Social Security cases: those from treating physicians, examining physicians, and non-examining physicians. Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). "The medical opinion of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)). "When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." Id. (citing 20 C.F.R. § 404.1527(c)(2)–(6)).

"'To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.'" Id. (quoting Ryan v. Comm'r Soc. Sec. Admin., 528 F.3d 1194, 1198 (9th Cir. 2008)). "This is not an easy requirement to meet: 'the clear and convincing standard is the most demanding required in Social Security cases.'" Garrison v. Colvin, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting Moore v. Comm'r Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002)).

///

13

"'If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.'" Trevizo, 871 F.3d at 675 (quoting Ryan, 528 F.3d at 1198). "This is so because, even when contradicted, a treating or examining physician's opinion is still owed deference and will often be 'entitled to the greatest weight . . . even if it does not meet the test for controlling weight.'" Garrison, 759 F.3d at 1012 (quoting Orn v. Astrue, 495 F.3d 625, 633 (9th Cir. 2007)). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Trevizo, 871 F.3d at 675 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).

### 5. ALJ's Decision Is Not Supported By Substantial Evidence

Here, as an initial matter, the ALJ discussed the contradicting opinions of the State Agency consulting doctors in her analysis of Plaintiff's medical evidence. Thus, the specific and legitimate standard applies here. Id. The Court finds, however, that the ALJ did not meet this standard when rejecting Dr. Fernandez's opinion for the following reasons.

First, the ALJ's conclusory statement that "some of the functional limitations" assessed by Dr. Fernandez were "inconsistent with [Plaintiff's] treatment records" generally, without pointing to specific examples of such evidence and providing an explanation or interpretation of how that evidence was inconsistent with Dr. Fernandez's opinion, does not amount to a specific and legitimate reason for discrediting Dr. Fernandez's opinion. Tr. 30; see Garrison, 759 F.3d at 1012 ("The ALJ must do more than state conclusions. [Sh]e must set forth h[er] own interpretations and explain why they, rather than the doctor's, are correct."); see also id. at 1012-13 ("[A]n ALJ errs when [s]he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or

criticizing it with boilerplate language that fails to offer a substantive basis for h[er] conclusion.") (citing Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996)).

Second, the ALJ's reason that "[t]he severity of some of the functional limitations assessed by Dr. Fernandez are inconsistent with . . . Dr. Fernandez's findings that all of [Plaintiff's] impairments were diagnosed by history" is not a specific and legitimate reason supported by the record for rejecting Dr. Fernandez's opinion. Tr. 30. Again, it is unclear which functional limitations are encompassed by the ALJ's description of "some of the functional limitations assessed by Dr. Fernandez" and it is similarly unclear how the severity of these unspecified limitations were contradicted by Dr. Fernandez diagnosing them "by history." See id.

Moreover, even if the ALJ had explained how the diagnostic method utilized by Dr. Fernandez—"history"—undercut the validity of the severity of the limitations Dr. Fernandez endorsed, Dr. Fernandez's opinion reveals that Dr. Fernandez did not endorse Plaintiff's functional limitations by reviewing only Plaintiff's diagnostic history as the ALJ asserts. See id. Rather, as discussed above, Dr. Fernandez supported his findings with complete psychological and mental status evaluations, Wechsler Adult Intelligence Scale and Memory Scale tests, a review of Plaintiff's "many" medical records, and a review of the "history" of Plaintiff's diagnoses of anxiety disorder, depressive disorder, and learning disorder. Tr. 520-27. Further, Plaintiff's test results from the Wechsler tests cited by Dr. Fernandez in support of his opinion reveals that Plaintiff placed in the first and second percentile on all three of the Wechsler Memory Scale test categories and in the fourteenth to thirty-seventh percentile in four of the five Wechsler Adult Intelligence Scale test categories. Tr. 526. Thus, Dr. Fernandez's findings were well supported by objective medical evidence in addition to Plaintiff's diagnostic history.

///

Finally, the ALJ's last reason for rejecting Dr. Fernandez's opinion—that Plaintiff had "adequate eye contact, cooperative behavior, adequate speech, a cheerful and positive mood, appropriate affect, no signs of perceptual disturbances, only mildly impaired attention and concentration, not impaired insight and judgment, not impaired fund of knowledge, and a Full Scale IQ score in the average range"—fails because this observation selectively relies only on evidence that supports a rejection of Dr. Fernandez's opinion, while ignoring other evidence that supports the doctor's opinion. See Holohan v. Massanari, 246 F.3d 1195, 1207-08 (9th Cir. 2001) (holding an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others).

For example, although Dr. Fernandez noted that Plaintiff displayed "adequate eye contact, cooperative behavior, adequate speech, a cheerful and positive mood, [and] appropriate affect," as the ALJ noted, Dr. Fernandez also observed that, at times, Plaintiff was "tense, anxious, [and] fearful[,]" that Plaintiff's "left hand shook noticeably when he was demonstrating that he had difficulties with his left side[,]" and that Plaintiff "also had tremors on his right hand and arm when he was working during the coding task." Tr. 30, 524-25.

Moreover, the ALJ's observation that Plaintiff had "no signs of perceptual disturbances, only mildly impaired attention and concentration, not impaired insight and judgment, [and] not impaired fund of knowledge," ignores notations from Dr. Fernandez's examination report that "slight confusion was evident[,]" that Plaintiff was able to recall only "1 out of 3 [items] remotely[,]" that Plaintiff "could not perform serial seven's [sic]" that Plaintiff was unable to "state the months in a backward mode[,]" that Plaintiff had an "inadequate attention span for answering interview questions and following test instructions[,]" that Plaintiff displayed an inability "to sustain concentration and work without distraction" during "performance tasks[,]" that Plaintiff's "[r]esponse time and work pace

were below average[,]" and that Plaintiff's behavior "demonstrate[d] some difficulties with cognition and emotional maturation." Tr. 30, 524-25.

Finally, the ALJ's finding that Plaintiff "[had] a Full Scale IQ score in the average range" ignores evidence that Plaintiff's IQ score placed Plaintiff in only the thirtieth percentile. Tr. 30, 526. The ALJ's observation also ignores Plaintiff's other test scores that place him in only the first and second percentile for auditory memory, visual memory, and visual working memory, and that place Plaintiff in only the fourteenth and twenty-first percentile for perceptual reasoning and processing speed. Tr. 30, 526. Thus, the ALJ ignored extensive evidence in Dr. Fernandez's examination report that supported Dr. Fernandez's opinion.

Accordingly, because the ALJ's reasons for rejecting Dr. Fernandez's opinion were not specific and legitimate or supported by substantial evidence in the record, the Court finds that remand for further proceedings is appropriate here so that that ALJ may reconsider Dr. Fernandez's opinion and the effect it has on Plaintiff's disability claim, once properly assessed.

## IV.   CONCLUSION

Because the Commissioner's decision is not supported by substantial evidence, IT IS HEREBY ORDERED that the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). See Garrison, 759 F.3d at 1009 (holding that under sentence four of 42 U.S.C. § 405(g), "[t]he court shall have power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing.") (citation and internal quotation marks omitted).

IT IS SO ORDERED.

DATED: 6/3/2020

HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge